EMMA L. STOUGH *et al.* v. BADGER LUMBER
COMPANY.

No. 13,823.   (79 Pac. 737.)

SYLLABUS BY THE COURT.

1. MORTGAGE—*Parties in Foreclosure Suit.* The owner of the
legal estate is an essential party to an effective foreclosure of
real property, and if a mortgagor conveys the mortgaged prop-
erty before the foreclosure proceedings are begun and the con-
veyance is recorded, or the grantee is in open, actual and
exclusive possession, the foreclosure as to such grantee is wholly
inoperative.

2. ——— *Effect of Defect of Parties.* If a mortgage is foreclosed
without the presence of the grantee of the mortgagor and there
is a sale in pursuance of the decree, the purchaser at the sale
will acquire nothing higher than an assignment of the liens
sought to be foreclosed and the right to foreclose such liens in
another proceeding.

3. ——— *Proof in a Second Suit.* In a second foreclosure brought
against the grantee of the mortgagor, not made a party in the
first, it devolves upon the plaintiff to prove the existence and
validity of the liens sought to be foreclosed, and the findings
and judgment in the first proceeding are not competent evidence
for that purpose.

4. ——— *Right of Grantee of Mortgagor to Defend.* In such
second proceeding the grantee of the mortgagor is entitled to
defend against the liens, and to prove any facts which will pre-
vent the enforcement of the liens against his property.

5. ——— *Exception in Deed Does Not Estop the Grantee.* A re-
cital in the warranty deed of the grantee, that the premises
conveyed are free and clear of all encumbrances, *except* certain
liens, naming them, is only a limitation of the covenant against
encumbrances, and is not such a recognition of the liens as will
estop the grantee from contesting their enforcement against
the property conveyed.

Error from Wyandotte court of common pleas;
WILLIAM G. HOLT, judge. Opinion filed February 11,
1905. Reversed.

*T. P. Anderson,* for plaintiffs in error.

*C. F. & S. D. Hutchings,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J. : In a foreclosure proceeding against property formerly owned and improved by Mettie Johnson were involved mechanics' liens, tax liens, and a mortgage lien of the Badger Lumber Company. It was brought by one Grigsby, who claimed a mechanic's lien, and later the Badger Lumber Company came in and set up its mortgage and also a mechanic's lien judgment of Turner & Moose, which they had purchased. A tax lien in favor of Rockwell was also pleaded, and in the decree then rendered the Rockwell claim was declared to be a first lien, the Grigsby and Turner & Moose claims were declared second liens, and the lumber company's claim was decreed to be a third lien. The property was sold by the sheriff under the decree to Toll, the agent of the lumber company, for $375, and when the company attempted to take possession of it they learned that Emma L. Stough claimed ownership of the property when the foreclosure proceeding was brought and judgment rendered. As Stough and her grantor, Walter A. Johnson, were not parties to that proceeding, the present suit was brought against them and their tenants, who had been in possession at and before the time the former action was brought. The company asked a foreclosure of their mortgage as against these parties, and also to be subrogated to the rights of the other lien-holders whose liens were in litigation in the first foreclosure action.

In her answer, Stough, in addition to a general denial, alleged that she was the owner of the property and was in possession of it by her tenant, Hammer, when the Grigsby action was brought; that the Grigsby lien was invalid ; that another of the liens

had been paid; and that the $200 mortgage of the lumber company, as well as another one on other property, was given for the consideration that the lumber company would pay off the liens in controversy, including the unpaid taxes charged against the property. These averments were denied by the lumber company, and on the trial the court found that there was due the company upon the mortgage and other liens $750, declared the amount to be a first lien upon the property, and decreed a foreclosure.

The right of Stough to defend against the liens mentioned was denied, and all of the testimony offered by her to that end was ignored and stricken out. The proceedings on the first foreclosure were received in evidence, and the findings and judgment of the court declaring and adjudging liens appear to have been regarded as binding upon Stough. As she was a grantee under the mortgagor, and was not made a party to the action, the foreclosure was wholly inoperative as to her. The owner of the legal estate is an essential party to an effective foreclosure, and if Stough held the record title or an ownership which imported notice to others, the judgment of foreclosure was a nullity as to her, and the proceedings could not be used as evidence of established liens against her land. It is said that when the Grigsby action was begun, on January 26, 1898, Mettie Johnson was still the apparent owner of the property. She conveyed to William Keffer on January 2, 1897, more than a year before the Grigsby action was commenced, and while proof of the recording of the deed was not included in the case-made, enough appears to warrant an inference that it was recorded before the action was begun. The direct proof of the recording of the deed is said to have been accidentally omitted from the case-made, but

evidently there was some notice of the conveyance, as Keffer was made a party to the Grigsby action. Keffer conveyed the property to Walter A. Johnson on January 21, 1898, and this conveyance was recorded on January 22, 1898. Johnson conveyed the property to Emma L. Stough on January 24, 1898, two days before the commencement of the action, but the deed was not recorded until January 31, 1898, five days after the action was instituted. It was recorded, however, before the answer and cross-petition of the lumber company asking a foreclosure of its mortgage was filed.

While there was some bungling in presenting and preserving the testimony as to the recording of the conveyances, we think that offered tended to show that the record title to the property was in Walter A. Johnson when the suit was brought. However that may be, there was sufficient testimony that each of the successive grantees in the conveyances mentioned was in actual, open possession of the land, and that Stough held possession through a tenant when the Grigsby suit was begun. If, in addition to an unrecorded deed conveying the legal estate in land, there is in the grantee actual, visible, exclusive and notorious possession, it is sufficient to constitute notice of title and to put all persons upon inquiry. (*Johnson v. Clark*, 18 Kan. 157; *School District v. Taylor*, 19 id. 287; *Greer v. Higgins*, 20 id. 420; *Tucker v. Vandermark*, 21 id. 263; *McNeil v. Jordan*, 28 id. 7; *Utley v. Fee*, 33 id. 683, 7 Pac. 555.)

The lumber company rightly concluded that Stough was a necessary party to an effective foreclosure and prudently brought this action for that purpose. As to her the liens were unadjudicated. The first proceeding operated to give the purchaser nothing higher

than an assignment of the liens and a right to proceed anew to foreclose them. (*Henrietta Frische v. Henry Kramer's Lessee*, 16 Ohio, 125, 47 Am. Dec. 368; *Childs v. Childs and others*, 10 Ohio St. 339, 75 Am. Dec. 512; *Kelgour v. Wood*, 64 Ill. 345; 2 Jon. Mort., 6th ed., § 1395.)

In foreclosing *de novo* it devolved upon the company to show the existence and validity of the liens and to what extent it had been subrogated to the rights of the lienors. In this case Stough stepped into the shoes of the mortgagor, and, unless estopped in some way, is entitled to contest the liens and prevent the enforcement of the same against her property. (*Waterson v. Kirkwood*, 17 Kan. 9; *Schmucker v. Sibert*, 18 id. 104, 26 Am. Rep. 765; *Grattan v. Wiggins*, 23 Cal. 16.)

It is argued that because Keffer, Johnson and Stough accepted deeds subject to the mortgage and other liens, Stough is in no position to contest them. The instruments were warranty deeds, containing the usual covenants, with an exception as to the one against encumbrances. In the deed to Keffer, as well as in the one to Stough, the grantors covenanted that the premises conveyed were free and clear of all encumbrances except a $200 mortgage made to the Badger Lumber Company, and taxes, while in the conveyance from Keffer to Johnson the covenant was that they were "free and clear of all encumbrances, except all back taxes and liens and mortgage held by the Badger Lumber Company," etc. It will be observed that there was no assumption of the mortgage debt by the grantees, nor was the property taken subject to the payment of the liens. The exception is not the equivalent of a statement that the grant is made subject to the mortgage or other liens, and

there is nothing approaching an affirmative recital of the existence or validity of any liens. The recital involved here is only a limitation of the covenant against encumbrances, and is not such a recognition of the mortgage or other liens as will estop the grantee from contesting their enforcement against the property conveyed.

A like exception was before the supreme court of Minnesota, and it was held that it did not estop the grantee from denying the existence or the validity of the mortgage. It was said:

"In the case at bar, the grant is not made *subject* to the mortgage; neither does the deed contain any stipulations that the mortgagee shall pay it. There is nothing expressly declaring it a lien on the premises. There is nothing in this deed by way of recital that would estop even the grantor himself. It contains no direct or affirmative recital of the existence of such a mortgage, much less of its validity, or that it was a lien upon the premises. The language is wholly negative. It asserts nothing affirmatively regarding the mortgage. It merely excepts it from the covenant against encumbrances. The meaning of this, in effect, is simply that the grantor will not covenant that it is not an encumbrance." (*Calkins v. Copley*, 29 Minn. 471, 13 N. W. 904.)

See, also, *Bennett v. Keehn, Imp.*, 67 Wis. 154, 29 N. W. 207, 30 N. W. 112; *Weed Sewing Machine Company v. Emerson*, 115 Mass. 554; *Maher et al. v. Lanfrom et al.*, 86 Ill. 513; *Brooks v. Owen*, 112 Mo. 251, 19 S. W. 723, 20 S. W. 492; *Williams v. Thurlow*, 31 Me. 392; *Briggs v. Seymour*, 17 Wis. 263; *Russell v. Kinney*, 1 Sandf. Ch. 34; *Hartley v. Tatham et al.*, 10 Bosw. 273; *Thompson et als. v. Morgan*, 6 Minn. 292 (Gil. 199); *Barrett v. Blackmar*, 47 Iowa, 565.

The lumber company may, of course, maintain a foreclosure against Stough, and is entitled to be re-

garded as the assignee of the other liens, or, rather, to be subrogated to the rights of the lienors to the extent of the money paid at the sale.

While the first proceeding settled matters of indebtedness and other questions as between the parties then before the court, it did not affect in any degree the rights of Stough. As to her it became necessary for the lumber company to prove the existence and the validity of the liens, not by the findings and judgment in the first case, but by such competent proof as would have been required if the suit had been brought against her in the first instance ; and this was not done. She was entitled to contest the liens and to show any fact or circumstance which would preclude their enforcement against her property. Competent testimony was offered in behalf of Stough, tending to show that the claims were not enforceable as liens against the property, but it was all stricken out, as well as that which tended to show that she was a purchaser in possession. This was error.

In view of the admissions made at the trial and in the course of the argument here, the refusal of a jury is no longer a material matter.

The judgment is reversed, and the cause remanded for a new trial.

All the Justices concurring.